UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| SARA BETH ANDERSON, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | 6:18-cv-93-JMH |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security,[1] | ) | |
| | ) | |
| Defendants. | | |

***

Plaintiff, Sarah Beth Anderson ("Anderson"), brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. The Court, having reviewed the record and the cross motions for summary judgment filed by the parties, [DE 11, 13], will **AFFIRM** the Commissioner's decision as no legal error occurred and the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence.

## I.    STANDARD FOR DETERMINING DISABILITY

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Still, Nancy Berryhill was serving as Acting Commissioner of Social Security when this action was filed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[2] In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform past relevant work; and, if necessary, Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the

---

[2] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II.   PROCEDURAL AND FACTUAL HISTORY

In June 2015, Anderson applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability as of April 2015.  [TR 209-215; TR 216-224]. Anderson alleged disability due to physical and mental impairments.  [TR 10; TR 12; 209-224].

Anderson's applications for SSI and DIB were denied initially on August 31, 2015.  [TR 134-137].  Her applications were also denied on reconsideration on December 16, 2015.  [TR 140-42]. Subsequently, Anderson appeared at an administrative hearing before ALJ Susan Brock.  [TR 38-75].  Anderson was represented by an attorney at the hearing.  [Id.].

The ALJ issued a decision on April 11, 2017, denying Anderson's claims and finding she was not disabled.  [TR 23].  The Appeals Council denied review.  [TR 1-3].  This appeal followed pursuant to 42 U.S.C. § 405(g).  [DE 1].  Consistent with the Court's Standing Scheduling Order, [DE 10], the parties have submitted cross motions for summary judgment, which are ripe for review.  [DE 11, 13].

Anderson alleges onset of disability at age 26.  Anderson engaged in past relevant work as a sales associate, a CNA, a daycare worker, and a nursery worker.  [TR 269].

At the hearing, Anderson reported that she stopped working in April 25th of 2015 due to a bone bruise on her left ankle. [TR 44]. She ultimately quit in June. [TR 44]. In particular she reported that the injury "caused me to be off of work for a while and the longer that I was off, I just started thinking more and more about what to do with going back to work or just going for the disability." [TR 44]. She reported that this injury healed in August of that 2015. [TR 44].

Anderson also reports that two other problems that primarily impact her ability to work. First, she reports that she suffers from undifferentiated connective tissue disease. [TR 49]. Anderson explained that this causes her a lot of joint pain and swelling. [Id.]. She also claims this has caused her problems with her breathing and requires her to have an emergency inhaler. [TR 50].

Second, she testified that she suffers from fibromyalgia. [TR 49]. This causes Anderson to experience back pain and sciatic nerve pain. [TR 49]. Anderson also claims that her fibromyalgia causes her to go numb on her right side once or twice per week, up to three to four hours at a time. [TR 50].

Anderson testified that she could not do any bending, that exercising is difficult, although stretching relieves some of her back pain. [TR 51]. She also claims that she went to physical therapy for the back pain to do traction for the back pain. [TR

51]. This involved massaging. [TR 51]. However, after she quit physical therapy, the back pain returned. [TR 51]. Anderson testified that she has joint pain in her fingers, elbows, ankles, knees, hips, and shoulders. [TR 52].

As to her Sjogren's, Anderson testified she lost all of her teeth. [TR 53]. She got dentures that do not comfortably fit. [TR 53]. Anderson believes that her lack of teeth affects her ability to work in customer service because she cannot present herself "in a nice way." [TR 53]. She also says she cannot speak effectively while wearing her dentures. [TR 54]. Anderson next testified that her Raynaud's constricts blood flow causing her to lose feeling in her fingers, especially in her extremities. [TR 55]. This is exacerbated by extreme temperatures, which, Anderson testified, she tries to avoid. [TR 56].

Anderson further testified that she suffers from UTIs on a frequent basis. [TR 53]. Anderson reports that her frequent UTIs cause her to get dizzy, have "vertigo," and pass out. [TR 57]. Anderson testified that she gets at least one (1) UTI per month. Andersons states that her monthly UTI episodes cause her to use the restroom frequently, from every thirty (30) minutes to an hour. [TR 58].

Next, Anderson testified as to her depression. [TR 58]. Anderson reported taking depression medication for eight (8) years. [TR 58]. Anderson claims she no longer likes to be around

people like she used to, does not like getting out of the bed, and do not like leaving her home. [TR 59]. Although her doctor has allegedly suggested she go to counseling, Anderson has not gone. [TR 58].

Finally, Anderson testified that she had asthma, requiring her to use a nebulizer during some months of the year. [TR 65]. Anderson reported that she typically has to use the nebulizer at nighttime, and that the treatment takes approximately 20-25 minutes. [TR 65-66].

A vocational expert, Jane Hall, also testified at the hearing. The vocational expert explained that Anderson had worked as a nurse's aide, a salesperson/cashier, and a babysitter. [TR 71]. The ALJ posed hypotheticals to the vocational expert. [TR 71-75].

The ALJ issued an unfavorable decision on April 11, 2017. [TR 10-23]. At Step One, the ALJ determined that Anderson has not engaged in substantial gainful activity since April 26, 2015. [TR 12]. At Step Two, the ALJ found that Anderson suffered from the following severe impairments: obesity, connective tissue disease, fibromyalgia, Raynaud's, Sjogren's, lumbago with sciatica, and asthma. [TR 12]. However, the ALJ found that recurrent UTI, acute bronchitis/pharyngitis, bone bruise left ankle/heel, vitamin D deficiency, hypertension, ovarian cyst, depressive disorder, and anxiety disorder were non-severe. [TR 13]. The ALJ found that

Anderson's medically determinable mental impairments of depression and anxiety were non-severe. [TR 13].

Thus, at Step Three, the ALJ found that none of those impairments or combination or impairment met or medically equaled the severity of any of the listed impairments. [TR 14]. In reaching this conclusion, ALJ considered Listings 4.12; 12.04; 12.06; 1.06; 14.06; 14.04; and 14.10; but found that Anderson had not satisfied the requisite severity.

Before proceeding to Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). [TR 14]. Specifically, the ALJ found Plaintiff could perform the following tasks:

> Light work...except for work requiring more than frequent climbing of ramps or stairs, stooping, kneeling, crouching, or crawling; frequent handling, fingering, and feeling; no climbing of ladders, ropes, or scaffolds; frequent exposure to extreme heat, cold, and wetness, no more than occasional exposure to unprotected heights and hazardous machinery; frequent exposure to dust, pollen, mites, allergens, poor ventilation, and other pulmonary irritants. Claimant can perform simple routine tasks where workplace changes are occasional and gradually introduced.

[Id.].

At step four, the ALJ discussed Sjogren's autoimmune disease, Raynaud's disease, fibromyalgia, and asthma. [TR 15]. The ALJ also discussed Anderson's prior treatments for urinary tract

infection, abdominal upset, widespread pain, knee pain, Raynaud's, ankle sprain, low back pain, depression and anxiety while reviewing the medical evidence. [TR 14-21]. Ultimately, the ALJ found that the objective medical evidence did not support Anderson's assessment of the severity of her symptoms. [TR 15].

The ALJ then concluded, at Step Four, that Anderson is unable to perform any past relevant work as a sales associate, certified nursing aide, day care provider, or sales associate cashier. [TR 21]. The ALJ based this determination upon, among other things, the vocational experts testimony that the these jobs are precluded by the residual functional capacity assessment. [Id.].

However, the ALJ determined that given Anderson's age, education, work experience, and RFC, that "there are jobs that exist in significant numbers in the national economy that [Anderson] can perform[]." [TR 22]. Again, the ALJ based her conclusion, in part, on the testimony of the VE that Plaintiff could be able to perform the requirements of occupations such as stock clerk (240,000 jobs nationally) office clerk (190,000 jobs nationally), and receptionist (101,000 nationally). As a result, the ALJ found that Anderson was not disabled within the meaning of the Social Security Act. [TR 22].

The Appeals Council denied review on February 6, 2018. [TR 1-3]. Having exhausted her administrative remedies, Anderson filed this action on March 28, 2018. [DE 1]. Pursuant to the

Court's Standing Scheduling Order, [DE 10], Anderson moved for summary judgment on August 9, 2018, [DE 11], and the Commissioner moved for summary judgment on August 31, 2018. [DE 13]. As a result, this matter is ripe for review. 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981, 416.1418.

Anderson argues that the ALJ's determination that Anderson is not disabled is not supported by substantial evidence. [DE 11-1 at 2, PageID 2341]. She further argues that the Commissioner failed to properly evaluate Anderson's subjective complaints of pain. [DE 11-1 at 2, PageID 2341]. The Commissioner contends that the ALJ's decision was proper and should be affirmed.

### III. STANDARD OF REVIEW

"The plaintiff has the ultimate burden to establish entitlement to benefits by proving the existence of a disability . . . ." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). When reviewing the ALJ's ruling, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court is to affirm the decision, provided it is supported by substantial evidence, even if this Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## IV. ANALYSIS

Anderson raises two main issues in this action. First, she argues that the ALJ's determination that Anderson is not disabled is not supported by substantial evidence. [DE 11-1 at 2, PageID 2341]. Second, she argues that the Commissioner failed to properly evaluate Anderson's subjective complaints of pain. [DE 11-1 at 2, PageID 2341]. We disagree.

**A. The ALJ's Determination that Anderson is not Disabled is Supported by Substantial Evidence.**

Anderson argues that the ALJ's finding, that she could perform light work and therefore is not disabled, was not supported by substantial evidence. [Id. at 11, PageID #2350]. Instead, Anderson claims that, considering the entirety of the record, she could not even perform a wide range of sedentary work, let alone light work. [Id.]. This belief stems from Anderson's claim that the ALJ erred in finding that she did not meet two listings: Listing 14.10 and 14.02. [DE 11-1 at 11-13, PageID #2350-52]. Anderson further argues that the ALJ failed to address the claimant's residual

functional capacity in regard to the her "lumbago with sciatica." [Id. at 13, PageID #2352]. Anderson is incorrect.

**1. Substantial evidence supports the ALJ's finding that Anderson did not meet Listing 14.10 or 14.02.**

Anderson argues that the ALJ erred in finding that her impairment or combination of impairments did not meet or medically equal the severity of one of the listed impairments. This is significant because, if a claimant's impairment meets or medically equals one of the listed impairments at 20 C.F.R. § 440, Subpart P, Appendix 1, then the ALJ must find the claimant disabled. 20 C.F.R. § 404.1520(a)(4)(iii). In the instant case, Anderson argues that the ALJ should have found that Anderson met Listing 14.10 and 14.02. We disagree.

**i. Substantial evidence supports the ALJ's finding that Anderson did not meet Listing 14.10.**

First, Anderson claims the "...ALJ has failed to properly address the severe impairment that she did find ... specifically[, she] failed to address Listing [1]4.10 in regard to Sjogren's Disease." [11-1 at 12, PageID #2351]. In support, Anderson states she was diagnosed with Sjogren's disease, and had a follow up on on December 20, 2016, where it was found that she had an abnormal EKG, hypertension, obesity and PCOS. [Id.]. Moreover, she claims that the assessment further stated that Anderson suffered from arthralgia of multiple joints, vitamin deficiency, positive ANA,

and undifferentiated connective tissue disease. [Id.]. As a result, Anderson argues that, "[b]ased on these findings, the ALJ should have addressed the specific issue of whether or not the claimant meets the Listing of 14.[10] in regards to Sjogren's Disease." Instead, she claims the "ALJ simply found it to be a severe impairment but did not address the specific Listing or the claimant's impairments which meet or equal that Listing." [Id. at 12, PageID #2351]. Thus, Anderson requests remand on this issue.

The Commissioner disagrees. [DE 13]. The Commissioner argues that, "[r]eading the ALJ's decision as a whole demonstrates that the ALJ found that [Anderson] does not have at least two of the constitutional symptoms or signs or any marked limitations[,]" outlined in the Sjogren's listing. [DE 13-1 at 8, PageID #2367]. In particular, the Commissioner notes that the ALJ summarized Anderson's rheumatologist's notes, which do not show Anderson suffered from severe fatigue, malaise, weight loss, or fever." [Id.]; see also, [TR 18]. Specifically, Anderson reported fatigue to both Dr. Pampati in August 2015 and to UK Rheumatology in February 2016. [TR 18, 474, 1700]. However, she specifically denied weight loss and fever, and did not mention malaise, [TR 474], and later reported her fatigue had improved and that she was gaining, not losing, weight. [TR 1992]. Lastly, the Commissioner notes that in December 2016 Anderson again had fatigue and was gaining weight but had no fever nor malaise. [TR 2222-2225].

Thus, the Commissioner argues that the ALJ's findings demonstrate that Anderson does not meet listing 14.10.  We agree.

"The plaintiff has the ultimate burden to establish entitlement to benefits by proving the existence of a disability ...."  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  Thus, at step three, Anderson had the burden of proving that her impairment or combination of impairments met or equaled all the criteria for a listed impairment.  *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see also Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

That listing requires a diagnosis and, in relevant part:

> A.  Involvement of two or more organs/body systems, with:
>
> 1.  One of the organs/body systems involved to at least a moderate level of severity; and
>
> 2.  At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)

20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 14.10.

There is no dispute that Anderson has Sjogren's Disease diagnosis.  [TR 12].  Anderson argues that the ALJ should have found that addressed whether Anderson met Listing 14.10 in regards to Sjorgen's Disease, but instead the "ALJ simply found it to be a severe impairment but did not address the specific listing or

the claimants impairments which meet or equal the Listing." [Id. at 12, PageID #2351]. Anderson implies that the ALJ's explanation of the findings pertaining to Listing 14.10 is inadequate.

The record demonstrates otherwise. The ALJ did, in fact, address the specific listing. [TR 14]. In particular, the ALJ found that Anderson's impairments were more than a slight abnormality and caused more than minimal effects on Anderson ability to do work. [TR 12]. The ALJ stated that she "has considered Listing[] ... 14.10 ... however, the requisite severity is not met." [Id.]. Moreover, as noted above, the ALJ addressed the specific symptomology, [TR 474, 1700, 1992, 2222-2225], related the Listing requirements. [TR 12-19].

In this case, the ALJ did consider whether Anderson met the listing standard and gave a reason for her conclusion. [TR 14]. However, while the ALJ's explanation is cursory, it is not without explanation. [Id.]. Additionally, the ALJ's decision and analysis should be read as a whole. *See Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012); *Athey v. Comm's of Soc. Sec.*, No. 13-cv-12529, 2014 WL 4537317, at *3-4 (E.D. Mich. Sept. 11, 2014). Accordingly, the ALJ's determination that Anderson does not have an impairment or combination of impairments that meets or medically equals any Listing, including Listing 14.10, is supported by substantial evidence.

### ii. Substantial evidence supports the ALJ's finding that Anderson did not meet Listing 14.04.

Second, Anderson argues that the ALJ failed to properly address her Raynaud's disease, which she claims is Listing 14.02. [DE 11-1 at 11-13, PageID #2350-52]. In particular, she claims that the "... ALJ should have addressed Listing 14.02 in regards to whether or not [Anderson] meets or equals the listing for Raynaud's Disease." [Id. at 12, PageID #2351]. In sum, she argues "[i]t is simply not enough for the ALJ to note that the claimant has these problems, the ALJ should be required to specifically address each of these issues which the ALJ failed to do in this case." [Id. at 13, PageID #2352].

However, beyond these bare assertions, Anderson has not identified other parts of the ALJ's decision that lack support and has failed to develop an argument on this point. "Under these circumstances," the Court "decline[s] to formulate arguments on [the Plaintiff's] behalf, or undertake an open-ended review of the entirety of the administrative record." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 491 (6th Cir.2006).

Regardless, we note that Listing 14.02 refers to systemic lupus. Nowhere does the Listing reference Raynaud's disease. However, Listing 14.04, which relates to systemic sclerosis, does, reference Raynaud's phenomenon. To establish that an impairment meets Listing 14.04, the claimant must first establish systemic

15

sclerosis, of which Raynaud's is one. 20 C.F.R. § Pt. 404, Supbpt.
P, App. 1, § 14.00. In addition, the claimant must establish

    1.  One of the organs/body systems involved to at
        least a moderate level of severity; and

    2.  At least two of the constitutional symptoms or
        signs (severe fatigue, fever, malaise, or
        involuntary weight loss).

*Id*. at 14.04.

Here, the ALJ specifically considered Listing 14.04 in
finding that Anderson did not have an impairment or combination of
impairments that meets or medically equals the severity of a listed
impairment. [TR 14]. In fact, reading the ALJ's entire decision,
the ALJ considered much medical evidence relevant to the listing.
As a result, the ALJ considered Anderson's Raynaud's to be a severe
impairment but noted that it did not meet the requisite severity
for Listing 14.04.

The evidence supports this finding. Anderson's medical
records reveal that while she complained of fatigue, she never
reported fever, malaise, or involuntary weight loss. [TR 12-21,
TR 474, 1700, 1992, 2222-2225]. In finding that Anderson was not
disabled, the ALJ was not required to discuss every piece of
medical evidence contained in the record so long as the ALJ
considered the evidence as a whole and reached a reasonable
conclusion. *See Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195,
199 (6th Cir. 2010). Here, the ALJ engaged in an in-depth analysis

of the relevant medical evidence.  As a result, the ALJ's finding,
that Anderson's Raynaud's did not meet Listing 14.04, is supported
by substantial evidence and no legal error occurred.

**2.    The ALJ properly considered Anderson's back condition
when evaluating her Residual Functional Capacity.**

Third, Anderson argues that the ALJ failed to address the
claimant's residual functional capacity in regard to the her
"lumbago with sciatica."    [Id. at 13, PageID #2352].    In
particular, Anderson argues that the ALJ failed to "properly
address the claimant's back conditions and that the claimant can
still perform light work even with this severe back condition[,]
which limits her from a physical standpoint."    [Id. at 13-14,
PageID #2353].

The ALJ considers residual function capacity between steps
three and four of the sequential analysis. The residual function
capacity is "the most [she] can do despite [her] impairments. *See*
20 C.F.R. § 404.1520(a)(4), 404.1545(a)(1), (5). The ALJ is
required to make this assessment "based on all of the relevant
medical and other evidence."    20 C.F.R. § 404.1545(a)(3).
Additionally, the ALJ is required to consider all medically
determinable impairments, both severe and non-severe, in
determining residual function capacity.    20 C.F.R. §
404.1545(a)(2).

Here, Anderson claims the ALJ did not consider her back issues. Specifically, Anderson claims that the ALJ did not consider two MRIs, which were performed in May and June of 2016. [Id. at 13, PageID #2352]. Both MRIs found that Anderson had an annular disc bulging and prominent osteophyte disc complex at T12-L1 and L1-L2. [Id.]. Anderson's argument is without merit.

The ALJ expressly found Anderson's condition, lumbago with sciatica, to be a severe impairment. [TR 12-14]. The ALJ also considered Anderson's report that she had an MRI, revealing a light bulging of five lower discs. [TR 15]. The ALJ's decision further noted that Anderson's reported back issues caused her pain when performing certain movements, including bending. [Id.].

Furthermore, the ALJ discussed claimant's evaluation by Dr. Bazzi, including the May 16, 2016, MRI, which noted that Anderson had an annular disc bulging with slight impingement as well as osteophyte disc complex and desiccation of the discs at T12-LI and LI-2. [TR 19; 2156-2169]. The ALJ noted that the examination revealed that flexibility was limited, and there was tenderness in the lumbar para-spinal muscles, but all muscle groups in the lower extremities were normal in strength, the knee and ankle reflexes were normal, and she was neurologically intact. [Id.]. As a result of her conditions, Anderson was only counseled to lose weight and participate in aerobic activity. [Id.]. She was further advised she could lift objects but was advised to do so close to

18

the body and to avoid twisting, bending, and reaching while lifting. [Id.].

In the instant case, Anderson has failed to demonstrate that ALJ did not consider her MRIs, much less her back issues, when determining Anderson's residual function capacity. Moreover, the ALJ's findings were supported by substantial evidence, as noted above. If supported by substantial evidence, the ALJ's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 876 (6th Cir.2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir.2007); *Longworth v. Comm'r Soc. Sec. Admin.,* 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir. 1993). Because the ALJ's findings are supported by substantial evidence we decline to remand.

**B. The Commissioner Properly Evaluated Anderson's Subjective Complaints of Pain.**

Finally, Anderson she argues that the Commissioner failed to properly evaluate Anderson's subjective complaints of pain in formulating her RFC. [DE 11-1 at 2, PageID 2341]. In support of her argument, Anderson claims:

> [T]he has ALJ failed to properly asses the
> entirety of the medical evidence including all
> these additional medical problems which are
> resulting in additional levels of pain for Ms.

> Anderson.  She further has decreased tolerance
> to perform any type of physical activity
> including sitting, standing, or walking from
> a psychological standpoint...The ALJ has
> failed to properly assess Ms. Anderson's
> subjective complaints that [s]he testified to
> at the hearing in this matter as well as his
> ongoing complaints to h[er] physicians.

[Id. at 15, PageID #2354].[3]

The Commissioner disagrees.  The Commissioner first argues that Anderson "does not challenge any of the reasons the ALJ gave for discounting her subjective complaints[,]" implying that Anderson's argument should be waived on this point.  [DE 13 at 11-12, PageID #2370-71].  The Commissioner argues that the ALJ's RFC finding was supported by substantial evidence.  [Id.].  In particular, the Commissioner argues that Anderson's medical reports did not reveal any significant abnormalities to her musculoskeletal or neurological systems, [Id. at 11, PageID #2370], and that the ALJ further noted that Anderson was told to take ibuprofen for her pain. [Id.].  As a result, the Commissioner argues that it was appropriate for the ALJ to discount Anderson's subjective complaints.  [DE 13 at 11-12, PageID #2370-71].  We agree with the Commissioner.

---

[3] Anderson relies on Social Security Ruling ("SSR") 96-7p, which interpreted SSA Regulation, 20 C.F.R. § 404.1529, in setting forth a two-step process for evaluating subjective complaints.  [DE 11-1 at 14, PageID #2353]. Anderson implies that SSR 96-7p required the ALJ to make a finding on the credibility of Anderson's statements.  [Id. at 14-5, PageID #2353-54]. However, SSR 96-7p was superseded by SSR 16-3p.

Notably, other than the citation to the ALJ's findings, Anderson fails to support her various arguments by citing to evidence in the in the administrative record. [DE 11-1 at 14-15, PageID #2353-54]. This Court has held "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *Vasquez v. Astrue*, No. 6:12-CV-125-KSF, 2013 WL 1498895, at *6 (E.D. Ky. Apr. 11, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). For example, Anderson references the underlying medical records, but fails explain what they indicate, or how they support Anderson's argument, much less cites to any. [DE 13-1].

At least some citation to the record is required for Anderson to demonstrate that she is entitled to relief. Counsel must take the necessary step of pointing to specific instances where the ALJ erred and provide citations to the record that indicate that the ALJ's decision is not supported by substantial evidence. Simply put, this Court is not required to scour the entire record, looking for evidence that may support of Anderson's claims.

Nevertheless, on the merits, there is no evidence before the Court that indicates that the ALJ erred in discounting Anderson's

subjective complaints.   The ALJ reviewed Anderson's medical
history and relied on substantial evidence—including, objective
medical evidence, and opinion evidence by examining and non-
examining physicians—in determining that Anderson was not disabled
and able to perform light work with some limitations.  [TR 14-21].

When evaluating a disability claim for social security
purposes, the claimant's pain should be considered. *Kirk v. Sec.
of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).
Both the Social Security Administration ("SSA") and the Sixth
Circuit have guidelines for analyzing a claimant's subjective
complaints of pain.  The SSA regulations are set forth in 20 C.F.R.
§ 404.1529. The Sixth Circuit's guidelines for evaluating a
claimant's assertions of disabling pain are set forth in *Duncan v.
Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).
The Sixth Circuit laid out these guidelines as follows:

> First, we examine whether there is objective
> medical evidence of an underlying medical
> condition. If there is, we then examine: (1)
> whether objective medical evidence confirms
> the severity of the alleged pain arising from
> the condition; or (2) whether the objectively
> established medical condition is of such a
> severity that it can reasonably be expected to
> produce the alleged disabling pain.

*Id.*  The Sixth Circuit explicitly noted in this decision that
the test "does not require ... 'objective evidence of the pain
itself.'"  *Id.* (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071
(3d Cir. 1984)).   However, as the Sixth Circuit clarified in

*Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994), "[b]oth the SSA standards and the *Duncan* test require objective *medical evidence* showing an *underlying medical condition.*" *Felisky*, 35 F.3d at 1038–39 (6th Cir. 1994) (emphasis added).

However, the ALJ is entitled to rely on her own observations. *Halter*, 246 F.3d at 773. In addition, the ALJ may also discount witness credibility when a claimant's testimony contradicts the medical records and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Here, Anderson testified that she could does chores, including laundry, she has trouble getting in and out of the shower, can care for her nieces, shops once a month, and can go to school events. [TR 16, 52, 60-66]. She watches tv for about an hour at a time. She further reports being able to lift only five points at the most, stand for one hour, and sit for 30 to 60 minutes. [Id.]. However, as correctly, noted by the Commissioner, [Id. at 11, PageID #2370], Anderson's medical reports did not reveal any significant abnormalities to her musculoskeletal or neurological systems. [TR 16, 474, 1700, 1994, 2140, 2224-25]; *see* 20 C.F.R. § 404.1529(c)(4). Specific to her alleged low back pain, a June 14, 2011 back x-ray revealed chronic changes, but showed no defects, normal alignment, no acute vertebral body fracture, wedge compression, deformity, or subluxation. [TR 18-19, 1249]. With regard to her psychological issues, Dr. Rigby found that Anderson

had no impairment to understand, retain, and follow instructions; to sustain concentration and persistence to complete tasks in a normal amount of time; to maintain social interactions with supervisors, friends, and the public, and only moderate impairment to adapt and respond to the pressures of normal work activity. [TR 21, 468-472]. As a result, we conclude the ALJ's finding is supported by substantial evidence in the record.

The ALJ's evaluation of Anderson's testimony is entitled to deference by this Court. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). As stated previously, "[t]he Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155 at *5 (E.D. Tenn. Mar. 30, 2009). So long as the ALJ cited substantial evidence to support his conclusions, this Court may not re-evaluate his determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

When considering all medical evidence and Anderson's personal testimony regarding her activities, the ALJ properly evaluated her subjective complaints of pain. Because the ALJ's evaluation is supported by substantial evidence, it is entitled to deference. Thus, remand is unwarranted.

## V.    CONCLUSION

Having found no legal error on the part of the ALJ and that the decision is supported by substantial evidence, the Acting Commissioner's final decision is **AFFIRMED**. Accordingly, **IT IS ORDERED** as follows:

(1)  The Commissioner's final decision is **AFFIRMED;**

(2)  Plaintiff's motion for summary judgment [DE 11] is **DENIED;**

(3)  Defendant's motion for summary judgment [DE 13] is **GRANTED;**

(4)  Judgment in favor of the Defendant will be entered separately.

This the 26th day of September, 2019.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge